UNITED STATES DISTRICT COURT IN AND FOR
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

| | | |
|---|---|---|
| DELTORA ENTERPRISES GROUP CO. LTD. | ) | 18-cv-02713 |
| *a company organized under the laws* | ) | Hon. |
| *of the British Virgin Islands* | ) | |
| | ) | |
| GONZALO EDUARDO MONTEVERDE BUSSELAU | ) | |
| *a citizen of Peru* | ) | |
| | ) | |
| MARIA ISABEL CARMONA BERNASCONI | ) | |
| *a citizen of Peru* | ) | |
| | ) | |
| Petitioners | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| | ) | |
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| Respondent | ) | |
| | ) | |
| _____ | ) | |

## PETITION FOR RETURN OF PROPERTY, INJUNCTIVE RELIEF, AND AN UNSEALING OF THE AFFIDAVIT SUPPORTING THE SEIZURE WARRANT

Petitioners, Deltora Enterprises Group Co. Ltd ("Deltora") and Gonzalo Eduardo Monteverde Busselau and Maria Isabel Carmona Bernasconi, (hereinafter referred to as "Petitioners"), pursuant to the Due Process clause of the Fifth Amendment of the U.S. Constitution, the Fourth Amendment of the U.S. Constitution, 18 U.S.C. §981(b)(3), Federal Rule of Criminal Procedure 41(g), and the common law right of public access, petition this Honorable Court for the immediate return of Petitioner's property, to restrain the United States from violating Petitioners' constitutional and statutory rights, and to unseal the affidavit supporting the seizure warrant in this case.

TABLE OF CONTENTS

INTRODUCTION ................................................................................................ 4

JURISDICTION & VENUE.............................................................................. 6

FACTUAL & PROCEDURAL BACKGROUND ........................................... 6

   A.  History of Failed Investigations into Petitioners' Conduct in Peru .................... 6

   B.  May 2016 Pedro Morote and the Commission Before Congressman Juan Pari in May of 2016 and the Pari Report ........................................................................... 7

   C.  November 2016 Illegal Reopening of Closed Investigation into Petitioners ...................... 8

   D.  Seizure Warrant in This Case & Letter Agreement to Freeze the Deltora Account ............ 9

MEMORANDUM OF LAW IN SUPPORT OF PETITION FOR RETURN PROPERTY, INJUNCTIVE RELIEF, AND UNSEALING OF THE AFFIDAVIT IN SUPPORT OF THE SEIZURE WARRANT................................................................................. 13

   A.  Under the *Richey* Standard, This Court Should Exercise its Equitable Jurisdiction to Hear this Petition........................................................................................ 13

     1.  No Adequate Remedy at Law Supports this Court's Equitable Jurisdiction to Hear this Motion ........................................................................................ 14

     2.  Possessory Interest & Irreparable Harm...................................................... 15

     3.  Callous Disregard for Constitutional Rights & Due Process ........................ 16

   B.  Pursuant to United States v. $8,850, 461 U.S. 555, (1983) the Government's Indefinite Seizure of Petitioners' Brokerage Account is a Violation of the Due Process Clause of the U.S. Constitution ...................................................................................... 16

     1.  Length of Delay........................................................................................ 18

     2.  Reason for Delay ...................................................................................... 20

     3.  Petitioners' Assertion of Rights ................................................................ 21

     4.  Prejudice to Petitioners............................................................................. 22

   C.  The Government's Restraint of the Raymond James Account through Raymond James Violated the Fourth Amendment and Rule 41 and Exceeded the Scope of the Seizure Warrant 23

D.   Petitioners Property Must be Returned and the Restrictions on the Deltora Account Must be Released Immediately Because the Letter Agreement with Petitioners is Void as Against Public Policy ........................................................................................................... 26

   1.   Letter Agreement Entered into Between United States and Lawyer not Licensed in the United States and not Authorized to Enter into Agreements on Behalf of Petitioner's Which Impacted Petitioners' Critical Constitutional Rights in U.S. Court Proceedings ................. 27

   2.   Letter Agreement is Void Against Public Policy Because the Agreement Authorizes Conduct Which the Government Must Believe is Criminal Conduct if they Also Believed they Had Probable Cause to Seize the Brokerage Account .................................................... 29

E.   Petitioners Have a Pre-indictment Fourth Amendment Right to An Unsealing of the Affidavit Supporting the Seizure Warrant .............................................................................. 31

F.   The Fourth Amendment Guarantees Petitioners the Ability to Challenge the Lawfulness of the Seizure Warrant and Probable Cause Supporting it and therefore an Unsealing of the Present Matter is Necessary and in the Public Interest ............................................................ 33

   1.   Confidential Law Enforcement Sources and Witnesses & Insight into Direction Scope and Source of Information ..................................................................................... 34

   2.   Endangerment of Evidence ........................................................................... 36

   3.   Location of Evidence and Witnesses .............................................................. 36

   4.   Distinct Deprivation of Property Interest in this Case – Seizure of a Personal Brokerage Account .......................................................................................................... 36

G.   Petitioners Have an Established Common Law Right of Access to Unseal the Seizure Warrant ................................................................................................................... 37

V. ......................................................................................................................... 39

PRAYER FOR RELIEF ............................................................................................ 39

VI. ....................................................................................................................... 39

REQUEST FOR HEARING ....................................................................................... 39

I.

INTRODUCTION

Petitioners Monteverde and Bernasconi have been the subject of persecution in Peru and the continuing persecution has yielded countless investigations which, at each turn, were closed by Peruvian prosecutors. Each investigation, including the most recent one, purport to relate to Petitioners' supposed affiliation with Odebrecht.

Last year, in the wake of the Odebrecht scandal, (but after Odebrecht had admitted guilt in the United States), the Government requested that Magistrate judge Amanda A. Sansone issue a seizure warrant for Petitioners' account at Raymond James with beneficial account holder, Deltora Group Enterprises Limited Co. (Deltora). Deltora maintains an active brokerage account with Raymond James in St Petersburg Florida, account number 29394539 of which Mr. Gonzalo Monteverede Bussellau and Ms. Maria Isabel Carmona Bernasconi are the sole shareholders of Petitioner. After FBI agents requested that Magistrate Sansone issue the Seizure Warrant, Magistrate Judge Amanda A. Sansone signed the Seizure Warrant on June 8, 2017 and the account held at Raymond James was subsequently frozen but no funds were *seized.* At that point or shortly thereafter, the matter was opened under seal as *In the matter of the seizure of all assets held in Raymond James & Associates account number 29394539 in the name of beneficial account holder Deltora Enterprises Group Co*., Case No. 8:17-mj-1404-T-AAS (M.D. Fla.)

Petitioners bring this action before this Honorable Court to return Petitioners' property, to vacate the Seizure Warrant in this case, to immediately release the restrictions on Petitioners' Deltora account 29394539 maintained at Raymond James which is currently frozen, and to immediately unseal any declaration or affidavit supporting the seizure warrant.

As set forth herein, the restraint of Petitioners' property violates the Due Process clause of the U.S. Constitution. Under the test articulated by $8,850 vs. United States, 461 U.S. 555 (1983),

(i) the delay of more than 16 months without the commencement of any formal proceeding is significant; (ii) the Government has not justified its substantial delay (and continues to oppose any unveiling of the affidavit supporting the initial seizure) in commencing any proceeding; (iii) Petitioners vigorously asserted their rights to their property once they understood what those rights were; and (iv), the 16 month period following the seizure of Petitioners' property is prejudicial to Petitioners — it has substantially prejudiced Petitioners' ability to present a defense in any proceeding the Government may commence and the 16 month long deprivation of Petitioners' property is inherently prejudicial to Petitioners. .

In addition, the Seizure Warrant never authorized any restraint of Petitioners' property and there was no statutory, constitutional, or legal authority to the *restrain* Petitioners' property pursuant to applicable civil and criminal forfeiture statutes or rules of federal procedure. Instead, the authority for any such restraint arose from an extra-judicial Letter Agreement executed by the Government and Petitioners' former representative which, for the reasons set forth herein, should be voided as against public policy.

Lastly, Petitioners are entitled to an immediate unsealing of any affidavit or declaration supporting the Seizure Warrant pursuant to the Fourth Amendment and the common law right of access. This is especially true where, as here, the Government has not alleged any legitimate compelling interest sufficient to outweigh Petitioners' constitutional and common law right to an unsealing.

Accordingly, Petitioners are entitled to the immediate return of their property, the immediate release of the restrictions on the Deltora account maintained by Raymond James, and an immediate unsealing of the declaration or affidavit supporting the seizure warrant.

II.

JURISDICTION & VENUE

Petitioner Deltora is a company organized under the laws of British Virgin Islands and a citizen of the British Virgin Islands.  Petitioners Mr. Monteverde and Ms. Bernasconi are citizens of the Peru.

This Honorable Court has subject matter jurisdiction to hear this action pursuant to 28 U.S.C. §1331, 18 U.S.C. §981(b)(3)[1], the Due Process Clause of the Fifth Amendment of the U.S. Constitution, the Fourth Amendment of the U.S. Constitution, the common law right of public access, Federal Rule of Criminal Procedure 41(g), and *Richey v. Smith,* 515 F.2d 1239, 1243-44 (5th Cir. 1975).

This Petition is properly in the Middle District of Florida, Tampa Division, because a substantial part of the events or omissions giving rise to the claim occurred in this District and a substantial part of property that is the subject of the action is situated in this District. 28 U.S.C. §1391(b)(2). Further, Respondent is located in this District. 28 U.S.C. §1391(b)(1).

III.
FACTUAL & PROCEDURAL BACKGROUND

**A.  History of Failed Investigations into Petitioners' Conduct in Peru**

Attached as **Exhibit A** is a translated declaration of Marlon Martinez, a licensed attorney in Peru, who has represented Petitioners for several years. As articulated by Mr. Martinez, various Peruvian prosecutors have opened and closed investigations in 2008, 2011, 2014, and 2016 into the same conduct that likely forms the basis for the Government's seizure of the Deltora brokerage

---

[1] This Section states in pertinent part that a motion for return of property pursuant to Federal Rule of Criminal Procedure 41(g) may be filed in the district where the property was seized or where the warrant was issued.

account. In each circumstance, the prosecutors' office assigned to the investigation has declined prosecution.

Moreover, Petitioners have organized a website, www.todosobremorote.org which details the long history between Petitioners, and a former employee, Pedro Morote. The site also includes certified public documents from Peruvian prosecutors' offices which Petitioners' stand ready to introduce at any hearing on this Motion. Mr. Morote has on many occasions lodged false accusations of criminal conduct against Petitioners[2] along with Gustavo Garritti. Mr. Morote has also made extortionate demands to Petitioners demanding payment of money to refrain from making false reports of criminal conduct to the Peruvian authorities.[3] In response to Mr. Morote's false allegations against Petitioners, Mr. Morote was found liable for defamation which is a criminal offense in Peru.

### B. May 2016 Pedro Morote and the Commission Before Congressman Juan Pari in May of 2016 and the Pari Report

On May 26, 2016, Congressman Juan Pari, convened an Investigative Commission in Lima, Peru involving sworn testimony. Prior to the hearing, one of the owners of Petitioner provided Congressman Pari with over 117 attachments via email. Included in those attachments were documents demonstrating Petitioners' innocence. Many of those documents were also previously provided to the U.S. Government in this case by Petitioners' former representative , an attorney in Peru. Prior to the hearing, Petitioner also met with Congressman Pari personally to discuss Mr. Morote's allegations and wrote a letter to Congressman Pari which is attached as

---

[2] www.todosobremorote.org

[3] *Id.*

**Exhibit B.**[4] During the hearing, Petitioners were able to successfully refute all of Mr. Morote's allegations. At the conclusion of the hearing, Congressman Pari assembled a report[5] which was then provided to the Department of Justice.[6] The Report was not  an unanimously prepared Report and there was no debate before the Plenary Session of the Congress of the Republic. **Exhibit A.** Absent from that Report are also any of the 117 exculpatory attachments provided by Petitioners to Congressman Pari.

### C.  November 2016 Illegal Reopening of Closed Investigation into Petitioners

In November of 2016, within months after the Peruvian prosecutors archived a fourth investigation into Petitioners, which was widely publicized in Peru**,** *see* **Exhibits C and D,** the Office of the Special Prosecutor for Corruption opened an investigation into Petitioners based primarily on newspaper reports and articles relating to payments made by Odebrecht to Peruvian companies. (**Case No. 19-2016**). According to the report provided by the Office of the Special Prosector (which the undersigned has reviewed at length) to Petitioners, the investigation, at its inception, was focused on a single wire transfer from Odebrecht to Constructora Area SAC (a company controlled by Petitioners) in 2007. *See also* **Exhibit A**, Declaration of Attorney Marlon Martinez.

---

[4] There are witnesses in Peru that stand ready and willing to testify to bolster these points at any hearing on this Motion

[5] https://translate.googleusercontent.com/translate_c?depth=1&hl=en&prev=search&rurl=translate.google.com&sl=es&sp=nmt4&u=https://larepublica.pe/politica/836338-informe-pari-es-un-elemento-basico-en-investigacion-sobre-sobornos-senala-congresista-jorge-castro&xid=25657,15700022,15700124,15700149,15700168,15700186,15700190,15700201&usg=ALkJrhheB7qBY7id3EXJuF7Ny5hFlLlnrw

[6] https://translate.google.com/translate?hl=en&sl=es&u=https://larepublica.pe/politica/1005394-informe-pari-fue-entregado-a-corte-de-justicia-de-eeuu-y-al-fbi&prev=search

Shortly thereafter, on January 4, 2017, the 2009 investigation, (**case number 211-2009**) into Petitioners that was closed by Peruvian prosecutors in 2010 and prompted by the false reports by Mr. Morote was awkwardly resurrected by the Office of the Special Prosecutor for Money Laundering Crimes (**Case Number 45-2016**). In an effort to validate the reopening of this investigation, the Office of the Special Prosecutor for Money Laundering Crimes provided a detailed report dated January 10, 2017 to Petitioners describing the purported legal authority to "reopen" this investigation[7] and a summary of the facts that are the subject of the investigation of the Special Prosecutor. *See* also **Exhibit A**, Declaration of Attorney Marlon Martinez.

On January 10, 2017, the Office of the Special Prosecutor for Corruption issued a resolution to consolidate the investigation 19-2016 and investigation 45-2016 because of the similarities between the two investigations. The Office of the Special Prosecutor for Corruption and special prosecutor, Dr. Hamilton Castro Trigoso currently control both investigations.

**D.**  **Seizure Warrant in This Case & Letter Agreement to Freeze the Deltora Account**

More than 14 months ago, on June 8, 2017, this Honorable Court issued a warrant to seize the above Deltora account and granted Government's motion to seal the warrant and all supporting materials. *See* Declaration of Attorney Barbara Levy, attached to *Government's Opposition to Motion to Unseal.*

That same date, June 8, 2017, your Honor signed the Seizure Warrant directing the seizure of the subject Deltora account and to execute the Seizure Warrant by or before June 22, 2017. **Exhibit E**, Seizure Warrant. That case is under seal and is designated as *In the matter of the seizure of all assets held in Raymond James & Associates account number 29394539 in the name of*

---

[7] Petitioners maintain that the reopening of this investigation was illegal and violation of their due process rights under applicable Peruvian law and the Peruvian Constitution. *See* **Exhibit A**, Declaration of Dr. Marlon Martinez.

*beneficial account holder Deltora Enterprises Group Co*., Case No. 8:17-mj-1404-T-AAS (M.D. Fla.)

That same date, June 8, 2017, the Government mailed a letter to Caroline Hall at Raymond James & Associates in St Petersburg, Florida attaching the signed Seizure Warrant requesting the immediate liquidation of the Deltora Account and that a check be made payable to "US Marshalls Service" so that the proceeds of that account could be deposited into a U.S. treasury account pending the disposition of this case. **Exhibit G**, Raymond James Cover Letter for Materials.

Shortly thereafter, Raymond James expressed concerns with immediate liquidation of the account and counsel for the Government agreed to temporarily restrain the funds at Raymond James in order to discuss these concerns.

On or about June 26, 2017, attorneys representing the Government communicated with Petitioners' former representative,  a lawyer that the Government knew was not licensed to practice in any jurisdiction in the United States concerning the above issues with the Deltora account.

On or about June 28, 2017, the Government then sent Petitioners' former representative a "Letter Agreement" to memorialize the terms of their prior phone conversation.  The Letter Agreement was signed by the Government and purported to be a written agreement between the Government and Petitioners permitting Raymond James – not the Government – to restrain (not seize) the Deltora account. The Letter Agreement authored by the Government also permitted Petitioners to trade funds in his portfolio, at his own risk, within the account and/or, at his discretion, liquidate the account.

On or about July 6, 2017, the Seizure Warrant was submitted to your Honor. **Exhibit F**, Amended Seizure Warrant Return. In the Section labeled "Inventory of the property taken" no items were listed. *Id.* A handwritten note stated "*Agent was advised that the account would have*

*to be liquidated. Copy of the warrant given to Tyler Brass [sic]*." The Seizure Warrant Return was signed by Special Agent Robert Montgomery. *Id.*

On or about July 12, 2017, Petitioners' representative  sent by e-mail1 to Government counsel the countersigned Letter Agreement and a power of attorney form (the "Power of Attorney") referencing the Warrant and authorizing Augusto Santiago to represent Petitioners in the sealed matter. *See* **Exhibit E,** Executed Letter Agreement.

On or about July 18, 2017, Special Agent Robert Montgomery filed an Amended Seizure Warrant Return with the Court reflecting the above-referenced agreement to restrain the funds at Raymond James pending further order of the Court, purporting to supersede the return filed on or about July 6, 2017. **Exhibit F**, Amended Seizure Warrant Return.

On or about July 19, 2017, counsel for the Government sent by e-mail copies of the signed Letter Agreement and Power of Attorney to counsel for Raymond James and Raymond James placed the above conditions on the Deltora account.

Following the Amended Seizure Warrant Return dated July 18, 2017 and the executed Letter Agreement signed by both parties (June 28, 2017 and July 11, 2017), the Government did not file any motions with the court requesting a temporary restraining order of the Deltora account and no court temporary restraining order was entered by this Honorable Court.

 Around this same time, but no later than August of 2017, Petitioners began providing the Government with hundreds of pages of documents attesting to the origin of Petitioner's wealth and the source of the funds in the Deltora account. In addition, the Government received dozens of documents detailing the long history of investigations that Peruvian prosecutors have initiated against Petitioners which, each and every time, "fue archivado," which is, to say, they were closed and declined cases.

In late May of 2018, Petitioners retained the undersigned's Firm.

On June 15, 2018, after the undersigned received no response from Petitioners' former representative after having contacted Petitioners' former representative numerous times to provide any documents in connection with the seizure, including any correspondence with DOJ, the undersigned communicated with Raymond James' legal department and requested any and all documents relating to the seizure.

On June 18, 2018 the undersigned mailed via FedEx 2 day a Motion to Unseal to Magistrate Judge Amanda A. Sansone in *In the matter of the seizure of all assets held in Raymond James & Associates account number 29394539 in the name of beneficial account holder Deltora Enterprises Group Co.*, Case No. 8:17-mj-1404-T-AAS (M.D. Fla.)

Later that afternoon, on June 18, 2018, outside counsel for Raymond James, promptly provided the undersigned with a cover letter and the requested documents. **Exhibit G**, Raymond James Cover Letter for Materials.

On July 2, 2018 the Government emailed a copy of its Opposition to Petitioner's Motion to Unseal to the undersigned in the case mentioned above.

On August 10, 2018,  pursuant to Magistrate Sansone's Order in *In the matter of the seizure of all assets held in Raymond James & Associates account number 29394539 in the name of beneficial account holder Deltora Enterprises Group Co.*, Case No. 8:17-mj-1404-T-AAS (M.D. Fla.), the undersigned emailed *Petitioners' Reply to the Government's Opposition to Petitioners' Motion to Unseal* to counsel for the Government and to your Honor's court deputy. On August 30, 2018, the Government filed a sur-reply.

On August 31, 2018, Petitioners filed a Motion for Return of Property in *In the matter of the seizure of all assets held in Raymond James & Associates account number 29394539 in the*

*name of beneficial account holder Deltora Enterprises Group Co*., Case No. 8:17-mj-1404-T-AAS (M.D. Fla.) to which the Government responded on September 21, 2018.

On November 1, 2018, Judge Sansone issued a 3 page Order denying Petitioners' motions finding that the magistrate lacked jurisdiction to hear the motions.

IV.
## MEMORANDUM OF LAW IN SUPPORT OF PETITION FOR RETURN PROPERTY, INJUNCTIVE RELIEF, AND UNSEALING OF THE AFFIDAVIT IN SUPPORT OF THE SEIZURE WARRANT

### A. Under the *Richey* Standard, This Court Should Exercise its Equitable Jurisdiction to Hear this Petition

Federal Rule of Criminal Procedure 41(g) provides:

> A person aggrieved by an unlawful search and seizure of property **or** by the deprivation of property may move for the property's return. The motion must be filed in the district where the property was seized. The court must receive evidence on any factual issue necessary to decide the motion. If it grants the motion, the court must return the property to the Petitioner, but may impose reasonable conditions to protect access to the property and its use in later proceedings.

Fed. R. Crim. P. 41(g) (emphasis added). Thus, a person who has been deprived of his or her property may move for the property's return under Federal Rule of Criminal Procedure 41(g). *Id.* Should a person move the court for such relief, the court must receive evidence of any factual issue necessary for the Court to decide on the motion. *Id.*

This court's decision to exercise jurisdiction over this motion arises from equitable considerations first articulated in *Richey v. Smith,* 515 F.2d 1239, 1243-44 (5th Cir. 1975). In deciding whether to exercise its equitable jurisdiction under Rule 41(g), the Court in *Richey* delineated the following factors: 1) whether the federal agents displayed "a callous disregard for the constitutional rights" of the Petitioner; 2) whether the Petitioner has a possessory interest in the property and has need for it; 3) whether the Petitioner would be irreparably injured without the

return of the property; and 4) whether the Petitioner has an adequate remedy at law. *See also United States v. Chapman,* 559 F.2d 402, 406 (5th Cir.1977) ("Federal courts have developed the doctrine of `equitable' or `anomalous' jurisdiction to enable them to take jurisdiction over property in order to adjudicate actions for the return of unlawfully seized property even though no indictment has been returned and no criminal prosecution is yet in existence." ); *In Re $67,470.00,* 901 F.2d 1540, 1544 (11th Cir.1990) ("The decision to invoke equitable jurisdiction is highly discretionary and must be exercised with caution and restraint");*United States v. Castro,* 883 F.2d 1018, 1020 (11th Cir.1989) (stating that the Court's power to fashion an equitable remedy on a motion for return of property arises from the court's "anomalous jurisdiction"); *Robinson v. United States,* 734 F.2d 735 (11th Cir.1984) (upholding order to return property seized during a subsequently dismissed criminal prosecution, citing inherent equitable authority and due process concerns).

Application of the four *Richey* factors demonstrates that this Court should exercise its equitable jurisdiction to hear this Motion.

1. <u>No Adequate Remedy at Law Supports this Court's Equitable Jurisdiction to Hear this Motion</u>

Standing alone, this *Richey* factor supports the immediate exercise of jurisdiction to hear this Motion. At present, there is absolutely no proceeding of any kind (no criminal indictment, no civil forfeiture complaint, and no administrative non-judicial forfeiture) to determine the rights of Petitioners with respect to the seized property, Petitioners have no remedy – let alone an adequate remedy – at law to challenge the Government's action of restraining and freezing their brokerage account. Thus, this court should exercise jurisdiction based on this factor alone because if this Court could not hear this Motion and were handcuffed by a stringent application of the other factors, then the Petitioners would have no ability to challenge the seizure. *Fuentes v. Shevin*, 407 U.S. 67, 80-81 (1972) ("The constitutional right to be heard is a basic aspect of the duty of

government to follow a fair process of decision-making when it acts to deprive a person of his possessions. The purpose of this requirement is not only to ensure abstract fair play to the individual. Its purpose, more particularly, is to protect his use and possession of property from arbitrary encroachment— to minimize substantively unfair or mistaken deprivations of property, a danger that is especially great when the State seizes goods simply upon the application of and for the benefit of a private party.")

### 2. Possessory Interest & Irreparable Harm

Petitioners undeniably have a possessory interest in the property restrained by the Government. Petitioners are the owners of the property contained in the Deltora account. The indefinite restraint of their funds has also caused significant hardship to Petitioners. Petitioners require distributions from the account to obtain loans, pay creditors, and to conduct their businesses in Peru. Without the ability to do so, Petitioners continue to suffer substantial hardship and could be irreparably injured without the return of their property.

Nonetheless, any reliance on this *Richey* factor seems outdated. Rule 41(g) was substantially amended more than 15 years after the *Richey* decision to reinforce that anyone "aggrieved by the unlawful seizure of property *or* the deprivation of property" may file a Rule 41 Motion. *See* Fed. R. Crim. P. 41(g); *see also Doan v. United States*, No. 09 Mag. 0017 (HBP), 2009 U.S. Dist. LEXIS 61908 (S.D.N.Y. 2009) ("the decisions that require the Petitioner to demonstrate irreparable harm before considering a preindictment *Rule 41(e)* motion have erected an unjustified barrier."). Further, unlike this case, *Richey* involved the seizure of a taxpayers' records, not the seizure of his bank accounts or his brokerage account. So, although this distinction supports a finding of irreparable harm, courts should not require a showing of irreparable harm under *Ritchey* unless a Petitioner seeks the return of records as opposed to

property. A seizure of property always poses the potential of causing irreparable harm to the person from whom the property was seized which is the case here.

   3.   <u>Callous Disregard for Constitutional Rights & Due Process</u>

Petitioners' property has been restrained for more than 13 months without any adequate explanation and notwithstanding the Government's continuous opposition to Petitioners' Motion to Unseal the affidavit in support of the seizure. As set forth below, 13 months is an unreasonable length of time and constitutes a "callous disregard" and a violation of Petitioners' due process rights. *See Mr. Lucky Messenger Serv., Inc. v. United States*, 587 F.2d 15, 17 (7th Cir. 1978) (finding that callous disregard can be analyzed as whether government has held the seized property for an unreasonable amount of time).

In light of these factors, this court should hear this Motion.

   **B.  <u>Pursuant to United States v. $8,850, 461 U.S. 555, (1983) the Government's Indefinite Seizure of Petitioners' Brokerage Account is a Violation of the Due Process Clause of the U.S. Constitution</u>**

This action also arises under the Fifth Amendment Due Process clause of the U.S. Constitution. It is axiomatic that the Fifth Amendment guarantees an owner of property seized by the government subject to forfeiture a right to a post-seizure hearing within a meaningful time. *United States v. $8,850*, 461 U.S. 555, 103 S. Ct. 2005, 76 L.Ed.2d 143 (1983).

In *$8850,* the Supreme Court considered a challenge to the timing of a civil forfeiture proceeding itself. That case involved an individual's failure to report U.S. currency to officials as she entered the country. *$8,850*, 461 U.S. at 557, 103 S. Ct. 2005. Under the federal statutory scheme in place at that time, individuals entering the country with more than $5,000 in U.S. currency were required to file a report with the U.S. Customs Service ("Customs") declaring the amount of money being transported. *Id*. Customs officials were authorized to seize any monetary instruments for which a report was not filed. *Id*. Under the statutes and regulations followed by

Customs, they would notify any person "who appears to have an interest in the seized property of the property's liability to forfeiture and of the claimant's right to petition the Secretary of the Treasury for remission or mitigation of the forfeiture." *Id*. If a claimant did not file a petition, then the Customs officer was required to prepare a full report of the seizure, which was then sent to the United States Attorney. *Id.* at 557-58, 103 S. Ct. 2005. And finally:

> [u]pon receipt of a report, the United States Attorney is required `immediately to inquire into the facts' and, if it appears probable that a forfeiture has been incurred, `forthwith to cause the proper proceedings to be commenced and prosecuted, without delay.' After a case is reported to the United States Attorney for institution of legal proceedings, no administrative action may be taken on any petition for remission or mitigation.

*Id.* at 558, 103 S. Ct. 2005 (citing 19 U.S.C. § 1604; 19 CFR § 171.2(a)).

The currency at issue was seized in September 1975, and a complaint seeking forfeiture was not filed until March 1977, a temporal gap of nearly eighteen months. The claimant argued that the government's delay in filing a civil forfeiture proceeding "violated her due process right to a hearing at a meaningful time." *$8,850*, 461 U.S. at 562, 103 S. Ct. 2005 (internal citation and quotation omitted). The Court applied a test articulated in *Barker v. Wingo*, 407 U.S. 514, 92 S. Ct. 2182, 33 L.Ed.2d 101 (1972), originally formulated to evaluate claims raised pursuant to the Sixth Amendment right to a speedy trial. *$8,850,* 461 U.S. at 564, 103 S. Ct. 2005. The Court reasoned that, while that test did not deal specifically with claims arising under the Fifth Amendment's due process right:

> ... the Fifth Amendment claim here — which challenges only the length of time between the seizure and the initiation of the forfeiture trial — mirrors the concern of undue delay encompassed in the right to a speedy trial. The *Barker* balancing inquiry provides an appropriate framework for determining whether the delay here violated the due process right to be heard at a meaningful time.

*Id*. at 564, 103 S. Ct. 2005.

That test involved "a weighing of four factors: length of delay, the reason for the delay, the defendant's assertion of his right, and prejudice to the defendant." *Id.* Applying the *Barker* test, the Court concluded that the balance of factors "indicate[d] that the Government's delay in instituting civil forfeiture proceedings was reasonable," and that no due process violation occurred. *Id*. at 569-70.

1. Length of Delay

Contrary to the Due Process clause of the Fifth Amendment of the U.S. Constitution, the Government has frozen the Deltora account for more than a year (approximately 13.5 months) without any indication that the Government intends to commence any type of formal proceeding during which Petitioners could be heard.

Several courts have found that an indefinite detention of property for more than a year is unreasonable and violates the Due Process clause. *United States v. One 1984 Nissan 300 ZX. Ga License No.. VIN JN1HZ11452EX032749*, 711 F. Supp. 1570 (N. D. Ga. 1989) (delay of 18 months between seizure of vehicle and initiation of civil forfeiture proceedings against the vehicle violated claimant's Fifth Amendment due. process rights, especially since the delay could not be explained reasonably; claimant entitled to possession of auto and government's forfeiture claim is dismissed); *United States v. $23, 407.69 in U.S. Currency,* 715 F.2d 162, 166 (5th Cir. 1983) (13 month delay violated due process); *United States v. $19,440*, 829 F. Supp. 303 (D. Alaska 1993) (33-month delay between initial seizure of currency and commencement of forfeiture action was unreasonable and violated claimant's right to due process; Fifth Amendment guarantees owner of property seized by government subject to forfeiture a right to post-seizure hearing within a meaningful time).

Further, in *Matter of McCorkle,* 972 F. Supp. 1423, 1435-36 (M.D. Fla, 1997), in holding that the seizure did *not* violate due process clause, this court cautioned that:

> [T]his does not mean that the Government is free to act without restrictions in this matter. Just as justice delayed is justice denied, harm that is evident, but not all-encompassing, may ripen into the irreparable with the passage of time. This Court shares the concerns of several other courts and commentators regarding the possibility of the "increasing and virtually unchecked use of the civil forfeiture statutes and the disregard for due process that is buried in those statutes.

*McCorkle*, 972 F. Supp. At 1435-36; *$19,440*, 829 F. Supp. at 309 ("When the government uses such a potent tool as the civil forfeiture law — a tool which in its present design strikes near the edge of the anvil of government power — it is under an obligation to act more expeditiously than it has in the case at bar.").

The court's guidance in *McCorkle* more than Twenty years ago remains significant. Here, the Government enjoys virtually unchecked discretion and power to seize assets as part of a *civil* seizure. *See also Leonard v. Texas*, No. 16-122, slip op. at *5-6  (U.S. Mar. 6, 2017) (Thomas, J.) (statement respecting the denial of certiorari) (expressing reservations about the survival of civil forfeiture "as a constitutional matter" because "historically forfeiture laws were narrower in most respects than modern ones" and "it is unclear whether courts historically permitted forfeiture actions to proceed civilly in all respects."). In fact, the only procedural limitations potentially restricting the Government's power in this case are this Motion and a Five (5) year statute of limitations for filing an indictment or civil forfeiture complaint.

Petitioners should not have to wait until months before the expiration date for the statute of limitations to have their day in court. The Government has had more than sufficient time to determine the direction of this case and their ongoing investigation and "[a]t some point in time due process requires the government act to afford a person with a meaningful opportunity to challenge the seizure of his property." *$19,440*, 829 F. Supp. at 309; *National Council of Resistance v. Dep't of State,* 251 F.3d 192, 205 (D.C. Cir. 2001) (citing *Mathews v. Eldridge,* 424

U.S. at 334-35, 96 S.Ct. 893) (So far as the meaning of "meaningful time" is concerned, "[a] fundamental norm of the due process clause jurisprudence requires that before the government can constitutionally deprive a person of the protected liberty or property interest, it must afford him notice and hearing.")

Thus, measured against constitutional due process standards, the Governments' "at some point in time" has come and gone.

2. Reason for Delay

After more than a year, the government has not justified its substantial delay in commencing any formal proceeding in this case. To the contrary, given the Government's continued opposition to *Petitioners Motion to Unseal,* the Government seems to take the position that it can delay the filing of any formal proceedings, freeze Petitioners' account indefinitely, and not divulge any of the information or facts supporting the seizure to Petitioners. This position is untenable, prevents Petitioners from defending against any of the Governments' allegations which support the seizure of the Deltora account, and directly contravenes fundamental notions of due process. See *Mr. Lucky Messenger Service, Inc. v. United States*, 587 F.2d 15, 18 (7th Cir.1978); *$23, 407.69 in U.S. Currency,* 715 F.2d at 166;  *$19,440*, 829 F. Supp. at 303-05; *One 1984 Nissan 300 ZX. Ga License No.. VIN JN1HZ11452EX032749*, 711 F. Supp. 1570, 1572-73.

In *Lucky Messenger,* the Seventh Circuit evaluated the Government's decision to delay the filing of any charges for 17 months. Although the court found that the Government is not required to secure an indictment overnight, the court reinforced that " if no charges are filed for nearly one and one-half years after the property was seized, and the Government is unable to present evidence justifying such a delay, constitutional violations emerge which would seem on equitable principles to mandate that the property be returned." *Mr. Lucky Messenger Service*, 587 F.2d at 18.

Here, these same equitable principles support an immediate return of Petitioners' property. At best, the Government has attempted to justify this delay by making vague references to the seizure as part of an international investigation involving foreign evidence and witnesses abroad. Nonetheless, as reinforced in our *Reply to the Government's Opposition to Petitioners' Motion to Unseal*, none of these facts are a mystery. It is painstakingly obvious to Petitioners that Petitioners have been unfairly targeted by Peruvian prosecutors for more than a decade for conduct related to Odebrecht based largely on information supplied by IDL reporters (Pedro Morote and Gustavo Gorriti). All of those investigations had been closed until late 2016 when Peruvian prosecutors decided to awkwardly resurrect an investigation focusing on the same conduct which had previously resulted in the equivalent of a "no action" or a non-prosecution. Still, no charges have been filed against Petitioners in Peru and none of these events explain or justify the delay on the part of the United States in commencing any proceeding.

3. Petitioners' Assertion of Rights

Once Petitioners retained the undersigned, Petitioners vigorously asserted their rights by filing the Motion to Unseal and this Motion for the return of their property. Any delay in asserting their rights should be attributed entirely to Petitioners' complete lack of understanding regarding U.S. court proceedings and U.S. law. Prior to the retention of the undersigned, Petitioners were never properly advised regarding the nature of these proceedings, the nature of a seizure of property, U.S. criminal constitutional law, asset forfeiture law, federal rules of criminal procedure, and other applicable and relevant laws. *See* **Exhibits H-I.**

4.  <u>Prejudice to Petitioners</u>

The substantial delay in the commencement of any proceeding is prejudicial to Petitioners for 2 significant reasons; first, their ability to present a defense, and second, their ability to freely access and use the funds in the Deltora account.

*(a) Presenting a Defense*

The lengthy delay in commencing any formal proceeding will prejudice Petitioners in their ability to present a defense case (if a case commences) and to present exculpatory evidence and documents. *$8850,* 461 U.S. at 568-69 ("whether the delay has hampered the claimant in presenting a defense on the merits, through, for example the loss of a witness or other important evidence.") In the present case, witness memories will fade (sometimes they disappear) and witnesses must be subpoenaed from Peru or deposed in Peru which is another administrative hurdle the parties will likely have to resolve. Further, there are Thousands of Spanish documents, that would an indispensable part of any defense case if the Government were to commence a proceeding. The time, costs, and effort expended to translate those documents is substantial.  And, the chain of custody and authentication issues regarding this evidence become more complex, costly, and time consuming especially where, as here, the evidence is obtained from outside of the United States.

The prejudice from the delay is also amplified when you consider the additional, minimum 2 year period that the parties should reasonably anticipate between the time of filing any proceeding (indictment or complaint) and the resolution of that proceeding.

For example, if the Government made the decision to indict, Petitioners would request depositions under Federal Rule 15 of Criminal Procedure and would request Rule 16 discovery and make additional demands under *Brady, Giglio,* and *Jencks.*  The parties would also file pre-

trial motions and motions *in limine*, review discovery, complete Rule 15 depositions, and engage in additional trial preparation. Likewise, if the Government chose to file a complaint, then the Federal Rules of Civil Procedure would govern the proceeding. At a bare minimum, the parties would file and respond to pre-trial motions to dismiss and motions *in limine*, conduct discovery depositions and engage in other discovery, and schedule a summary judgment hearing on their respective cross-motions for summary judgment.

In either scenario, the parties are not likely to resolve the proceeding in less than 2 years but, while the Government waits to act at a "meaningful time," Petitioners are likely to be prejudiced further in their ability to present a defense.

*(b) Access to Funds*

The 16 month freeze of Petitioners' assets is inherently prejudicial to Petitioners. Because of the asset freeze, Petitioners cannot freely deposit money in the account, Petitioners cannot take distributions from the account when they require such distributions to finance their businesses or to pay creditors and vendors. And, on a fundamental level, Petitioners have been deprived of their property for more than a year without any explanation whatsoever from the U.S. government. *$19,440*, 829 F. Supp. at 309 ("An unexplained delay of the duration here presented mocks the standards by which government conduct must be measured when it confiscates property on no stronger ground than probable cause.")

Standing alone, or collectively, these factors warrant the *vacatur* of the Seizure Warrant, the immediate release of the restrictions on the Deltora account and the return of Petitioners' property.

C. **The Government's Restraint of the Raymond James Account through Raymond James Violated the Fourth Amendment and Rule 41 and Exceeded the Scope of the Seizure Warrant**

In the instant case, by freezing the Raymond James Account without an Order from any court or a hearing to dispute the asset freeze (which amounted to the functional equivalent of a TRO), the Government acted beyond the scope of the Seizure Warrant in violation of the Fourth Amendment of the U.S. Constitution and Rule 41.

Rule 41 and 18 U.S.C. §981(b)— which is governed by Rule 41 — authorized the Government to obtain a seizure warrant upon a showing of probable cause to a magistrate judge to seize Petitioners property which comports with the Fourth Amendment. *See* 18 U.S.C. §981(b)(2)(" Seizures pursuant to this section shall be made pursuant to a warrant obtained in the same manner as provided for a search warrant under the Federal Rules of Criminal Procedure.."); *see also* 4th Amendment, U.S. CONSTITUTION. Further, Rule 41 (e)(2)(A)(i) states that the United States has 14 days from the issuance of the seizure warrant to execute the warrant.

Here, the only legal authority provided to the United States by virtue of the Seizure Warrant signed by Magistrate judge Amanda Sansone (issued June 8, 2017 with a return date of n later than June 22, 2017) was to seize the Raymond James account by or before June 22, 2017. Yet, the seizure warrant in this case was not executed by or before June 22, 2017 as required pursuant to Rule 41(e)(2)(A)(i) and the Seizure Warrant. In fact, it was never "executed" because no seizure occurred.

Instead, the Raymond James account was restrained by virtue of an extra-judicial letter agreement between the United States and Petitioners' former representative that was never reviewed by any court (much like a confidential settlement). However, the Seizure Warrant, Rule 41, and the Fourth Amendment provided no legal authority to seek a *restraint* instead of a seizure of Petitioners' funds. And, by agreeing to a restraint, the Government abandoned the Seizure

Warrant and waived any constitutional or statutory authority they might have had pursuant to the Fourth Amendment of the U.S. Constitution, Rule 41, or Section 981(b) to seize the property.

The absence of any legal authority for this illegal *restraint* of Petitioners' funds is further illustrated by reference to the sub-sections of asset forfeiture statutes that do authorize pre-trial or pre-indictment restraint of property. 18 U.S.C. Section 983(j) – which does not apply here – authorizes the government to seek pre-indictment temporary restraining orders under certain circumstances. Section 981(b)(4)(A)-(B) authorizes the government to seek temporary restraining orders when a person is "arrested or charged in a foreign country in connection with an offense that would give rise to the forfeiture of property in the United States under this section or under the Controlled Substances Act," but that Section does not apply here either. Finally, the government can seek pre-indictment restraining orders under Section 853(e)(1)(B), but §853(e)(1)(B) requires notice and a hearing if the United States contemplates obtaining a restraining order *prior to* the filing of an information or indictment.  Such a hearing would require the Government to prove: (i) there is a substantial probability that the United States will prevail on the issue of forfeiture and that failure to enter the order will result in the property being destroyed, removed from the jurisdiction of the court, or otherwise made unavailable for forfeiture; and **(ii)** the need to preserve the availability of the property through the entry of the requested order outweighs the hardship on any party against whom the order is to be entered. *See* §853(e)(1)(B)(i)-(ii). In this case, by obtaining the invalid letter agreement, the Government has completely "side-stepped" this statutory requirement even though a warrant, pursuant to 853(f) would be unattainable. [8]

---

[8] Notably, there are also two reasons that the United States could not have obtained a seizure warrant pursuant to §853(f). First, the United States has not yet commenced any criminal proceedings. *United States v. Mann*, 140 F. Supp. 3d 513, 527-28 (E.D.N.C. 2015)("because the Government had not yet indicted [defendant] when it obtained the seizure warrants for the bank accounts, the government had not yet crossed the section 2461(c) bridge to the procedures of 21 U.S.C. §853. Thus, the government did not yet have the statutory authority to obtain a seizure warrant under section 853(f) against [defendants'] bank accounts."). Second, because the Government has agreed to "restrain"

Contrary to this universe of legal authority, the Government sought authority for restraint of Petitioners' account based on an invalid extra-judicial "Letter Agreement" with Petitioners' former representative. The terms of this agreement were then later included in the Amended Return executed on July 17, 2017 and signed by Special Agent Montgomery. Remarkably though, even after obtaining the "Letter Agreement" and filing the Amended Return, the Government did not file a motion for a temporary restraining order to support restraint of Petitioners' funds and/or an order from this Honorable Court to reflect the terms of this "agreement," and the Government never sought a joint stipulation from Petitioners to be filed with this court.

Accordingly, the Letter Agreement sought to grant the Government a remedy which is not authorized by the Fourth Amendment of the U.S. Constitution, Rule 41, or Section 981(b)(2), and which was never properly before any court's consideration, and which this court has never authorized by order or otherwise. For this reason, Petitioners' property should be returned, the Seizure Warrant should be vacated, and Raymond James should release any restrictions and any restraint on Petitioners' account immediately.

**D. <u>Petitioners Property Must be Returned and the Restrictions on the Deltora Account Must be Released Immediately Because the Letter Agreement with Petitioners is Void as Against Public Policy</u>**

---

the property, such agreement should preclude the Government from making any future claim that an "order under subsection (e) may not be sufficient to assure the availability of the property for forfeiture." *See* 21 U.S.C §853(f); *In the Matter of 2000 White Mercedes ML 320 Five Door SUV, VIN 4JGAB54EXYA197469,* 174 F. Supp. 1268, 1271 (M.D. Fla. 2001) (finding that the Government was not entitled to a seizure warrant under Section 853(f) because a protective order under Section 853(e) was sufficient and emphasizing that "[t]his court cannot ignore Congress' mandates that courts deny the issuance of a criminal seizure warrant where an order under 853(e) is sufficient to assure the property's availability for forfeiture.").

In addition, there are at least 3 statutes that authorize criminal forfeiture and specifically authorize pre-trial restraint. See 18 U.S.C. § 1963(d) (pretrial restraint in RICO cases); 21 U.S.C. § 853(e) (pretrial restraint in drug cases); 18 U.S.C. § 1467(c) (pretrial restraint in obscenity cases); 18 U.S.C. § 2253(c) (pretrial restraint in child pornography cases). 18 U.S.C. § 1345, by contrast, authorizes pre-trial restraint in health care and bank fraud cases, after a hearing, but does not authorize forfeiture of any assets. None of these statutes are, however, applicable.

The restrictions on the Deltora Account, which only survive by virtue of the Letter Agreement with Petitioners, must be released immediately because the Letter Agreement is void as against public policy.

Settlements and agreements are void against public policy when they directly contravene a state or federal statute or policy. *See Yockey v. Horn,* 880 F.2d 945, 950 (7th Cir.1989); *Jackson Purchase Rural Electric Cooperative Assoc. v. Local Union 816,* 646 F.2d 264, 267 (6th Cir.1981); *Murtagh v. University Computing Co.,* 490 F.2d 810, 816 (5th Cir.1974); *Atlantic Co. v. Broughton,* 146 F.2d 480, 482 (5th Cir.1944)("Though settlements in accord and satisfaction are favored in law, they may not be sanctioned and enforced when they contravene and tend to nullify the letter and spirit of an Act of Congress."); *see also Medical Development Network vs. Professional Respiratory Care*, 673 So. 2d 565 (Fla. 4th DCA 1996) (finding that consulting agreement was void as against public policy because, in practice, the agreement contemplated conduct that violated the federal Anti-Kickback statute); *Nursing Home Consultants, Inc. v. Quantum Health Servs., Inc.,* 926 F.Supp. 835, 842 (E.D.Ark.1996) (entering summary judgment in breach of contract dispute reasoning in part that agreement violated federal statute and was therefore void against public policy).

1. <u>Letter Agreement Entered into Between United States and Lawyer not Licensed in the United States and not Authorized to Enter into Agreements on Behalf of Petitioner's Which Impacted Petitioners' Critical Constitutional Rights in U.S. Court Proceedings</u>
In the present case, the Letter Agreement, was entered into between the Government and Petitioners' representative on behalf of Petitioners. Petitioners' representative is neither licensed in the U.S., nor affiliated with a large firm in the U.S. that provides such services or attached to any U.S. law firm.

Attached are declarations from Petitioners which demonstrate that prior to entering into the Letter Agreement with the Government, Petitioners were not properly advised of their rights by their representative and Petitioners were therefore not in a position to make an informed choice regarding the Letter Agreement. **Exhibits H-I,** Declarations of Gonzalo Monteverde & Maria Isabel Carmona Bernasconi.

The American Bar Association has also established a model rule governing foreign lawyers operating in the United States, which has been adopted and implemented in a majority of states. *See* ABA Model Rule 5.5(d). That Rule states in pertinent part:

> d) A lawyer admitted in another United States jurisdiction or in a foreign jurisdiction, and not disbarred or suspended from practice in any jurisdiction or the equivalent thereof, or a person otherwise lawfully practicing as an in-house counsel under the laws of a foreign jurisdiction, may provide legal services through an office or other systematic and continuous presence in this jurisdiction that:
>
> (1) are provided to the lawyer's employer or its organizational affiliates, are not services for which the forum requires pro hac vice admission; **<u>and when performed by a foreign lawyer and requires advice on the law of this or another U.S. jurisdiction or of the United States</u>**, <u>such advice shall be based upon the advice of a lawyer who is duly licensed and authorized by the jurisdiction to provide such advice; or</u>
>
> <u>(2) are services that the lawyer is authorized by federal or other law or rule to provide in this jurisdiction.</u>
>
> (e) For purposes of paragraph (d):
>
> (1) the foreign lawyer must be a member in good standing of a recognized legal profession in a foreign jurisdiction, the members of which are admitted to practice as lawyers or counselors at law or the equivalent, and subject to effective regulation and discipline by a duly constituted professional body or a public authority; or,
>
> (2) the person otherwise lawfully practicing as an in-house counsel under the laws of a foreign jurisdiction must be authorized to practice under this rule by, in the exercise of its discretion, [the highest court of this jurisdiction].

*See* ABA Model Rule 5.5(d) (emphasis ours)

It is undeniable that, if Petitioners' decision to enter the Letter Agreement were intelligent, knowing, and an informed choice, then the decision must have been based on an understanding of civil and criminal forfeiture statutes, U.S. criminal constitutional law, Federal Rules of Criminal Procedure, and other relevant U.S. laws. Despite this, Petitioners' representative, could not have competently rendered such advice or services under any set of circumstances because, by providing any such advice, Petitioners' representative would have caused a violation of Model Rule 5.5(d).

Compounding this problem, the Government knew or should have known that Petitioners' representative was not licensed to practice law in any U.S. jurisdiction. Under his letterhead in each email he sent to the Government, it states <u>"Licensed to Practice Law in Peru Only</u>." Yet the Government opted to move forward with the Letter Agreement. Would the Government have permitted Petitioners' representative to execute a Settlement Agreement on Petitioners' behalf? The answer must be "no" and therefore the Government never should have entered into the Letter Agreement with Petitioners' representative because, in many critical respects, the Letter Agreement -- which authorizes the Government to restrain Petitioners' assets for an indefinite period of time, without a court order, and without a hearing or opportunity to be heard -- is indistinguishable from a Settlement Agreement.

Thus, Petitioners' property should be returned immediately and the restrictions on the Deltora account should be released because the Letter Agreement is void as against public policy.

2. <u>Letter Agreement is Void Against Public Policy Because the Agreement Authorizes Conduct Which the Government Must Believe is Criminal Conduct if they Also Believed they Had Probable Cause to Seize the Brokerage Account</u>

The Letter Agreement is void against public policy because it permits Petitioners to trade (and potentially gain from) assets which the Government must believe are proceeds of a crime.

18 U.S.C. §§ 1956(a)(1)(A) and (a)(3)(A) criminalizes the following conduct:

- Conducts a financial transaction which involves proceeds of specified unlawful activity *with the* intent to promote the carrying on of specified unlawful activity, *see* 18 U.S.C. §§ 1956(a)(1)(A), or

- Whoever with the intent to promote the carrying on of specified unlawful activity conducts or attempts to conduct a financial transaction involving the property represented to be the proceeds of unlawful activity. See 18 U.S.C. §§ 1956(a)(3)(A).

In the present case, as part of the Letter Agreement with Petitioners, the Government authorized Petitioners' to buy, sell, and continue trading the funds in the Deltora account. Yet, buying, selling, and trading in the Deltora account, is akin to "conducting a financial transaction" to promote a specified unlawful activity in violation of Section 1956 *if* the Government's position (and the reason they sought and obtained a seizure warrant) is that the funds contained in the Deltora account are proceeds of a federal crime perpetrated by Petitioners.

A hypothetical illustrates this point. The Government claims they have probable cause to seize a brokerage account because they believe that the contents of the brokerage account were derived from narcotrafficking. If the owner of that account then used the funds in that account to purchase and sell a stock which then yielded an increase in the total assets in the brokerage account, could the government deny that the additional funds in the brokerage account from the sale of that stock were assets derived, directly or indirectly, from the proceeds of criminal conduct?

For these reasons, the conditions in the agreement permitting Petitioners to trade, buy, and sell[9] funds in the Deltora account also demonstrate that the Government did not have probable cause to support the seizure. Simply put, by permitting trading in the account, the Government

---

[9] In addition, by permitting Petitioners to execute trades or investments that result in losses, the Government seems willing to risk a significant decrease in the assets in the account which might be available for forfeiture.

could not have accumulated probable cause to believe that funds in the Deltora account were proceeds of any federal crime. [10]

### E. Petitioners Have a Pre-indictment Fourth Amendment Right to An Unsealing of the Affidavit Supporting the Seizure Warrant

Petitioners have a pre-indictment Fourth Amendment right to unseal the seizure warrant affidavit. This is because the Warrant clause of the Fourth Amendment of the U.S. Constitution requires the Government to establish probable cause, supported by oath or affirmation, to search or seize personal or real property. *See* U.S. CONST., 4th AMENDMENT

For this reason, courts also continue to recognize that individuals whose property is the subject of a search pursuant to a warrant have a <u>pre-indictment</u> right of access to search warrant materials, including the supporting affidavit, and that right is grounded in the Fourth Amendment. *See In re Search Warrants Issued on April 26, 2004*, 353 F. Supp. 2d 584, 590 (D. Md. 2004). (affirming the magistrate's order and recognizing "a search subject's pre-indictment Fourth Amendment right to inspect the probable cause affidavit."); *In re Search of Up North Plastics, Inc.*, 940 F. Supp. 229, 232 (D. Minn. 1996) (denying government's pre-indictment motion to keep in place a previously entered order sealing the affidavit in support of a search warrant after addressing whether the person whose property is seized has a right of access under the Fourth Amendment to the affidavit in support of the search warrant."); *see also United States v. Oliver*,

---

[10] Furthermore, the Government should be estopped from claiming that the funds in the account are proceeds of a crime. *In Re Garfinkle*, 672 F. 3d 1340, 1347 (11th Cir. 1982) (estoppel requires (i) words, acts, conduct or acquiescence causing another to believe in the existence of a certain state of things; (ii) willfulness or negligence with regard to the acts, conduct, or acquiescence; and (iii) detrimental reliance by the other party upon the state of things so indicated); *see also., Minerals & Chemicals Philipp Corp. v. Milwhite Co.,*414 F.2d 428 (5th Cir. 1969); *Richards v. Dodge,* 150 So.2d 477 (Fla.App.1963); *State ex rel. Watson v. Gray,* 48 So.2d 84 (Fla.1950). In doing so, the Government would be assuming a position that is contrary to their official act ratifying trades and investments in the Deltora account.

208 F.3d 211, 2000 WL 263954, *2 (4th Cir. 2000) (unpublished) (recognizing a Fourth Amendment right to examine the search warrant affidavit.); *Bennett vs. United States*, 2013 WL 3821625 at *8-9 (S.D. Fla. July 23, 2013) (assuming without deciding that the petitioner had a Fourth Amendment pre indictment right of access to the search warrant but reasoning that courts that have found that Petitioners' possess a Fourth Amendment right of access have also found that the right is not absolute and may be overcome upon a showing of a *compelling* government interest that cannot be accommodated by some less restrictive means than sealing the court's records).

At least one court has reinforced this principle in granting a pre-indictment motion to unseal a search warrant:

> ...if citizens are guaranteed by the Fourth Amendment the right "to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures," it is inherently a part of that right that they be allowed to know whether the Fourth Amendment's mandate of probable cause, supported by oath or affirmation, has been satisfied. While it is not an unqualified right, it is nevertheless a right which should be carefully preserved.

*In re Search Warrants Issued August 29, 1994*, 889 F. Supp. 296, 299, 301 (S.D. Ohio 1995)(granting a home and business owner's pre-indictment motion to unseal search warrant materials, stating "the Fourth Amendment right to be free of unreasonable searches and seizures includes the right to examine the affidavit that supports a warrant after the search has been conducted and a return has been filed"); *See also In re Search Warrant for 2934 Anderson Morris Road, 48* F. Supp. 2d 1082, 1083 (N.D. Ohio 1999)("Generally, a person whose property has been seized pursuant to a search warrant has a right under the Warrant Clause of the Fourth Amendment to inspect and copy the affidavit upon which the warrant was issued."); *Matter of Wag-Aero, Inc*., 796 F. Supp. 394, 395 (E.D. Wisc. 1992) (vacating sealing order upon finding that the search target's due process rights would be violated by continued sealing of the supporting affidavit).

This standard is equally applicable in cases involving *seizures* of personal property. In fact, the Fourth Amendment Warrant Clause guarantees a person's right to be free from seizures of personal property except upon oath or affirmation supported by probable cause. *See* U.S. CONST., 4th AMENDMENT.

**F.  The Fourth Amendment Guarantees Petitioners the Ability to Challenge the Lawfulness of the Seizure Warrant and Probable Cause Supporting it and therefore an Unsealing of the Present Matter is Necessary and in the Public Interest**

First, an unsealing of the present matter is in the public interest and entirely warranted to permit Petitioners to challenge the legal basis (if any) for restraining the brokerage account. Indeed, the Fourth Amendment requirement for probable cause is meaningless if the Petitioners are unable to discover the basis for the seizure, and, consequently, are unable to challenge the lawfulness of the Seizure Warrant or the probable cause purportedly underlying the Seizure Warrant. *In Re Search of Up North Plastics, Inc*., 940 F. Supp. at 229, 231-32. As long as the present matter is sealed, Petitioners are effectively precluded from challenging the lawfulness of the Seizure Warrant and any supporting sworn statements.

Further, as set for the below, the Government has not met its burden of identifying a compelling governmental interest sufficient to outweigh Petitioner's right guaranteed by the Fourth Amendment to unseal the seizure warrant and any supporting materials.  The government, not the target, must demonstrate compelling government interests in keeping the affidavit under seal and that no less restrictive means, such as redaction, is available. *In re Search Warrants Issued on April 26, 2004*, 353 F. Supp. 2d at 590-91; *see also Up North Plastics*, 940 F. Supp. 229, 233 (D. Minn. 1996). ("More than a conclusory allegation of an ongoing investigation is required, however. The government must make a specific factual showing of how its investigation will be

compromised by the release of the affidavit to the person whose property was seized."). Nor has the Government identified any compelling legitimate government interest sufficient to outweigh Petitioner's common law right to unseal the affidavit in support of the seizure warrant and any supporting materials. And, the Government has not provided any rationale for why any purported compelling government interest could not be accommodated by some less restrictive means, such as redaction.

1. <u>Confidential Law Enforcement Sources and Witnesses & Insight into Direction Scope and Source of Information</u>

As far as the direction or investigation of Petitioners is concerned, Petitioners are completely aware that they are a possible target of the Government's investigation. After all, the Government seized the Deltora account. Petitioners are also completely aware that Pedro Morote has been providing the Peruvian prosecutors' offices (and very likely DOJ) information for more than 10 years and is very likely a "witness."[11] In fact, it is well known — because Mr. Morote boasts about it in newspaper interviews —  that all of the allegations of misconduct against Petitioners began with and were all spearheaded by Pedro Morote. Since 2008, Mr. Morote has alleged that Petitioners were involved in nefarious activities. However, investigations brought to their attention by Mr. Morote were closed 4 separate times due to the lack of sufficient evidence.

This information is far from a secret. All of the information is either publicly available information or information that has been communicated to Petitioners and their counsel in Peru, Marlon Martinez. Indeed, Petitioners, and their counsel have received copies from the various Special Prosecutors' offices outlining the contours of the consolidated investigation which includes the corruption investigation and the money laundering investigation which was originally

---

[11] Mr. Morote's statements and accusations are nothing new either. He has been interviewed and quoted throughout newspapers and other publications in Peru and other South American newspapers.

closed in 2009.[12]  Yet, no charges have been filed against Petitioners in the U.S. or Peru and more than 3 prosecutors' offices in Peru have previously archived investigations of Petitioners in 2008, 2010, 2011, and 2016.

Beyond this, the holding in *In re Four Search Warrants*, 945 F. Supp. 1563 (N.D. Ga. 1996) that there was a common law right of inspection is critical. In that case, the district court reasoned that the Government's fear of a possible "chilling" effect on future witnesses was not a sufficiently compelling reason to keep these affidavits sealed. As the Magistrate Judge succinctly noted:

> Witnesses who come forward in any high-profile investigation no doubt realize that, at some point, their identity and testimony may be made public at a hearing or trial and that they may receive some unwanted attention from the news media at that time. Therefore, it is unlikely that a disclosure of some witness information would have any deterrent effect on potential witnesses in addition to that which already exists.

*In re Four Search Warrants*, 945 F. Supp. At 1569

The same rationale is equally applicable here. The Government should not be permitted to continue its indefinite detention of Petitioners account and simultaneously refuse to unseal the affidavits in support of that seizure.

---

[12] *See* available at

https://translate.googleusercontent.com/translate_c?depth=1&hl=en&prev=search&rurl=translate.google.com&sl=es&sp=nmt4&u=https://larepublica.pe/politica/1004770-el-contrato-de-odebrecht-que-no-se-quiso-investigar&xid=17259,15700023,15700124,15700149,15700168,15700186,15700191,15700201,15700208&usg=ALkJrhhLB1vgxCGVAQtEPPbqB2xSz_Exxg

Lastly, unlike a terrorism or narco-trafficking investigation, there is no threat of witness harm or threat to witness security in the Government's investigation. Further, if the Government is sincerely concerned about divulging their cooperators (other than Mr. Morote) and/or the location of events (which is also obvious and public information– Peru, US, and Brazil), that particular information may be redacted very easily.

2. <u>Endangerment of Evidence</u>

An unsealing will not lead to the dissipation of evidence. There is no threat that an unsealing will lead to the endangerment of evidence for any trial, especially not against Petitioners. To the contrary, Petitioners have diligently maintained their records and possess thousands of pages of records some of which the Government has received *voluntarily* from Petitioners.

3. <u>Location of Evidence and Witnesses</u>

The possible existence of witnesses and evidence in foreign countries in and of itself, without more, is not a legitimate or compelling government interest. The DOJ has forged relationships with law enforcement all over the world whom the DOJ regularly relies on to assist with witnesses and preservation of evidence. This case is no different than any of those cases.

4. <u>Distinct Deprivation of Property Interest in this Case – Seizure of a Personal Brokerage Account</u>

This case involves the seizure of personal property. It does not involve a search at a health care provider's facility or a search that allegedly exceeded the scope of a warrant, or a newspaper's request for judicial records in the midst of a government investigation.

Accordingly, on balance, there has been no showing sufficient to overcome Petitioners' Fourth Amendment and common law right to unseal the affidavit.

### G. **Petitioners Have an Established Common Law Right of Access to Unseal the Seizure Warrant**

Petitioners have a common law right of access to inspect and examine the affidavit supporting the seizure.  Transparency and public access to judicial records and documents are also bedrocks of a functioning democracy. *In Re Search Warrant for Secretarial Area Outside of Gunn*, 855 F.2d 569, 573 (8th Cir. 1988). Public access serves three important objectives: it permits a Petitioner to effectively challenge the probable cause for the seizure of his property, it promotes transparency and the public's understanding of the judicial process, and it helps curb prosecutorial misconduct. *Press-Enterprise Co. v. Superior Court of California for Riverside County,* 478 U.S. 1, 13-14 (1986).

*In re Search Warrants Executed on June 14, 2016*, 221 F. Supp. 3d 863, 866 (S.D. Tex. 2016) and *In Matter of Searches of Semtex Industrial,* 826 F. Supp. 426 (E.D.N.Y. 1995 underscore these points.

In *In Re Search Warrants,* the Fifth Circuit recognized a qualified common law right of access to inspect search warrant affidavits. In that same decision, the district court also insightfully noted that "it is appropriate to place the burden on the Government to justify continued sealing, rather than enact a *per se* rule in favor of secrecy … to better ensure that these values do not become a dead letter." *In re Search Warrants Executed on June 14, 2016*, at 866, n.2.

*In Matter of Searches of Semtex Industrial,* 826 F. Supp. 426 (E.D.N.Y. 1995), Petitioners moved to unseal a search warrant relating to the search conducted in connection with a DOD fraud investigation of Semtex which Petitioners claimed exceed the scope of the search warrant. Although the court denied the motion, the court also made two other significant findings. First, the court agreed that the Second Circuit has recognized a common law right of access to search warrant materials. *In Matter of Searches of Semtex Industrial,* 826 F. Supp. at 429.  Second, in denying the

motion, the court emphasized that "disclosure should not be postponed indefinitely" and ordered the Government to unseal the warrant documents within 90 days (except as to information regarding undercover agents or cooperators) unless an indictment were returned. *In Matter of Searches of Semtex Industrial,* at 429.

In addition to these decisions, several district courts in this Circuit, either explicitly or implicitly, have recognized that the common- law right to inspect judicial records applies where the record at issue is a sealed search-warrant affidavit. *See, e.g., In re Macon Telegraph Pub. Co*., 900 F. Supp. 489 (M.D. Ga. 1995); *In re Four Search Warrants*, 945 F. Supp. 1563 (N.D. Ga. 1996); *In re Search of Office Suites for World and Islam Studies,* 925 F. Supp. 738 (M.D. Fla. 1996); *United States v. Peterson*, 627 F. Supp. 2d (M.D. Ga. 2008).

*In re Four Search Warrants,* the district court found that the common law right to inspect and copy judicial records and documents applies to the present [sealed search-warrant affidavit] case." *In re Four Search Warrants*, 945 F. Supp. at 1567-68 (68 (noting that "a district court must balance the presumptive right of access against important competing interests" and then weighing the Government's asserted reasons for continued sealing against Petitioner's interest in access). *In re Macon Telegraph*, the court reasoned that,"[d]espite the absence of a First Amendment right [of access to search-warrant affidavits], the common law right of access still remains." *In re Macon Telegraph*, 800 F. Supp. at 492. The courts in these cases also applied the general Eleventh Circuit common-law "balance of interests" approach to determine whether access to the search-warrant affidavit should be granted in light of the particular facts of the case at bar. *See, e.g., In re Office Suites*, 925 F. Supp. at 742 ("When deciding whether to grant a party's motion to seal or conversely the granting of a party's motion to unseal, the court is required to balance the historical presumption of access against any competing interest.") (other citation omitted). In fact, in *In re*

*Office Suites,* the district court characterized this unqualified right as a "historical presumption of access." *In re Office,* 925 F. Supp at 742.

## V.
## PRAYER FOR RELIEF

WHEREFORE, for all the reasons stated herein, Petitioners respectfully request that this Court issue an Order that:

(i)      Petitioners property should be returned immediately;

(ii)     The Seizure Warrant dated June 6, 2017 and signed on June 22, 2017 is vacated;

(iii)    The restrictions on the Deltora account maintained at Raymond James are released;

(iv)    The United States is enjoined from further interfering with, restricting, or seizing any assets contained in the Deltora Raymond James account.

(v)     Any Affidavit or declaration supporting the Seizure Warrant should be unsealed immediately.

## VI.
## REQUEST FOR HEARING

Petitioners also respectfully request that your Honor schedule an evidentiary hearing on this Petition during which your Honor would hear evidence on any factual issue necessary to decide this Petition. Fed. R. Crim. P. 41(g).

Further, at that hearing, the  Government would have the burden of demonstrating (1) that the restraint of Petitioners' property is not a violation of the Due Process Clause of the U.S. Constitution pursuant to the standard announced in the *$8850* decision (2) that the Government's lawfully obtained the restraint on Petitioners' property; *and* (3)  that current restraint of Petitioners' property satisfies the standards delineated in 18 U.S.C. § 983(j) and/or 21 U.S.C. § 853(e) and/or

Federal Rule of Civil Procedure 65 necessary to obtain a temporary restraining order of the Deltora account.

At the hearing the Government would also bear the burden of proving the existence of a legitimate compelling government interest sufficient to overcome Petitioners' Fourth Amendment and common law rights to an immediate unsealing of the affidavit supporting the seizure of their funds.

**Date: November 3, 2018**          Respectfully submitted,

                                    s/Andrew S. Feldman_____
                                    FELDMAN FIRM PLLC
                                    200 S. Biscayne Blvd
                                    Suite 2770
                                    Miami, Florida 33131
                                    Direct: 305.714.9474
                                    Email: afeldman@feldmanpllc.com
                                    Florida Bar No. 60325
                                    *Attorney for Petitioners*